HEARD NOVEMBER TERM, 1874.

## PARKER *vs.* WILSON.

Where a debt was contracted with reference to Confederate currency as a basis of value, its amount should be determined by the value such currency bore to lawful money of the United States at the time of the contract.

The question is one of fact, and it is error to instruct the jury what amount to find.

In such a case the value of the consideration may be shown as evidence upon the point whether the contract was made with reference to Confederate currency, as a basis of value, but not to authorize the jury to adopt the value of the consideration as the amount of the debt.

BEFORE ORR, J., AT ABBEVILLE, OCTOBER TERM, 1872.

This was an action by Wm. H. Parker, late Commissioner in Equity of Abbeville County, against Frances L. Wilson, executrix of John M. Wilson, deceased.

The action was on a bond, dated 1st February, 1864, and conditioned for the payment of $12,200, in two equal annual instalments, with interest from date, payable annually.

On behalf of plaintiff evidence was given tending to show that the consideration of the bond was a tract of land sold by the plaintiff to the testator of defendant at the date of the bond; what was

the value of the land in good money at the time of the sale; and what was the purchasing value of Confederate currency at the time and place of sale.

The defendant offered no evidence.

The jury found for the plaintiff a verdict of $4,074.

The defendant appealed.

The charge of His Honor the Circuit Judge, and the questions made by the appeal, appear in the opinion of the Court.

*Burt,* for appellant:

The principles of law involved in this case have been so maturely considered, so authoritatively determined, and so emphatically announced by this Court, as to preclude misapprehension and to forbid discussion.

On the former hearing of this case an undivided Court held that where it appears on the face of the contract, or it is conceded by the parties, or it is ascertained by the jury, that the contract was made with reference to Confederate States notes, or their equivalent, " and there is no evidence to show the value of the contract in lawful money of the United States, then it is the duty of the jury, as a rule of evidence, to determine the value according to the Act of 1869," (3 S. C., 296.)

In the judgment the Court further say, " the rule has been fully settled in the cases of *Neely* vs. *McFadden,* 2 S. C., 169; *Harmon* vs. *Wallace,* 2 S. C., 208; and *McKeegan* vs. *McSwinney,* 2 S. C. 191." See, also, *Thorington* vs. *Smith,* 8 Wallace, 1.

It is submitted that the only questions to be considered are the following:

*First.* Was the rule for estimating the value of the contract so precisely and so gravely announced by this Court distinctly and authoritatively submitted to the jury by the Circuit Judge?

*Second.* Was the verdict of the jury a departure from the rule? If the rule was not so stated to the jury by the Judge below, and the verdict did not conform to the rule, the non-conformity of the verdict to the rule must be ascribed to error in the instruction of the Judge, and a new trial must be the consequence.

*McGowan,* contra:

*First.* This verdict ought to stand, because it is in accordance with the law, the intention of the parties and the justice of the case·

1. The face of the bond calls for.........................$12,200 00
2. By scale according to Act 1869............................990 00
3. True value of land........................................4,060 00
4. Verdict of the jury.......................................4,074 00

*Second.* There was no error in the charge of the Judge, who read to the jury the former decision of the Supreme Court in this case, and ruled in favor of defendant every point made by her counsel in writing, except as to the tender, about which no question is made.

1. It was not error to admit evidence of the true value of the land, with a view to ascertain what was the contract of the parties.—*Rutland* vs. *Copes*, 15 Rich., 84; *Bobo* vs. *Goss*, 1 S. C., 263; *Harmon* vs. *Wallace*, 2 S. C., 212; *Parker* vs. *Wilson*, 3 S. C.

In the last case on the subject, *Halfacre* vs. *Wharley*, (not yet reported,) it is said the intention of the parties is to prevail as to the character of the currency, in which payment of the notes was to be made, and this may be ascertained by evidence as to their understanding at the time, and, in its absence; evidence of any circumstances may be introduced to show the currency to which they looked for payment. The parties are also entitled to the benefit of the Ordinance of the 27th September, 1865, referred to by this Court in the case of *Bobo* vs. *Goss*, 1 S. C., 262, and *Harmon* vs. *Wallace*, already cited.

2. It was not error to instruct the jury that, if they found the parties contracted " to be paid in good and lawful money," they should find the amount due on the bond and interest thereon ; that was in precise accordance with all the cases.

3. It was not error to instruct the jury that, if they found the parties contracted to be paid in Confederate money, the plaintiff was entitled to recover but one dollar for every $12.24 of the amount of the bond, the defendant certainly had no right to complain of that charge.

4. The jury were instructed " that, if they should reject both the foregoing conclusions, they might inquire whether the contract between the parties was made with reference to the real and true value of the property, and find according to that view. That was certainly not error.

*Third.* The principle established in regard to these contracts made during the war is to ascertain the intention of the parties, and to enforce the contract according to that intention—that is, if

the contract can be ascertained, to enforce such contract and not make a new contract for the parties.

1. In this case, under the charge, the jury found for the plaintiff $4,074, the true value of the land as proved, which shows that, in their judgment, the parties did not contract with a view to payment in Confederate money; that was a question of fact left to them, and they have decided in the negative. That being decided, the Act of 1869 has no application to the case.

When the contract was not made with reference to Confederate money, the Court will not enforce the scale of the Act of 1869; especially when the enforcement of it would work a greater injustice to the *vendor* than the enforcement of the bond, according to its terms, *would work to the vendee.* The land in the last fifty years has not, at any time, been worth less than *seven dollars per acre*; the defendant is struggling to get it for less than *two dollars per acre*, by the application of the scale of relative values in the Act of 1869. The sale was made by a public officer, under orders of the Court, and there was no agreement to take payment in Confederate money,

No such agreement has been shown, or ever will be. No matter what the Court may decide to be the proper standard of recovery, it is perfectly certain that there never was an agreement to receive payment in Confederate money. The Court takes no pleasure in forcing such a monstrous result, and, the proof not requiring it, will not do so.

2. In this case the finding of the jury also negatives the idea that the parties contracted to pay, according " to the terms of the bond," in good and lawful money, and, in behalf of defendant, they reduce the bond, although she offered no evidence at all.

3. The jury, under the charge, may have found that the parties contracted with reference to the real and true value of the property. They say, upon the evidence in the case, *that was the contract of the parties,* and they fixed their verdict accordingly. In this view the verdict is right, according to the intention of the parties.

*Fourth.* The jury may have found that the bond was to be paid in Confederate money, not as valued in the Act, but according to its purchasing value in the community at that time. The witnesses, Parker, Hawthorn, Bonner, Mattison and Robert Pratt, proved that the Act is not correct as to " the true state of relative values." They all stated that, by common use in Abbeville County at the time, the value of Confederate money was *at least four times greater*

than was ascribed to it in the Act—three for one, instead of twelve for one; so that even if the bond was referred to the purchasing value of Confederate money at the time and place of the contract, the *verdict is right.*

1. Evidence of true purchasing value of Confederate money admissible. "Evidence contradictory to the Act may be resorted to in reference to the value of Confederate money."—*Neely* vs. *McFadden,* 2 S. C., 169.

"The inquiry is what, at the time and place of contract, was the standard, according to common understanding and usage, (page 176.)

The question then arises, when the commercial standard differs from the legal, which is to control," (176.)

"We, therefore, conclude that it is competent to go into proof of existing facts and circumstances of what, at the time of the contract, was commonly used and dealt in, in order to show the intent of the parties," (same, 177.)

If the intention of the parties is to be considered at all, the purchasing value of Confederate money, at the time of the contract, and in that community, is the only value to which reference can be made, in interpreting the contract. Nothing short of the gift of prophecy could enable the parties, in 1864, during the war, to foresee what would be the value fixed by the Act in 1869, five years after.

*Fifth.* The same result follows, and the verdict is right, if the evidence failed to show whether the parties made any agreement as to "the money in which the bond was to be paid, or, if any, what that agreement was." If the parties made no contract on the subject, or if it cannot be shown what the contract was, the contract being executed by putting the defendant into possession, there still must be a recovery, and the measure of the recovery is the value of the property sold.

1. When property is sold and delivered to one, at his request, and there is no agreement as to its price, or the agreement is unintelligible or rescinded, the law implies a promise to pay the value of the property, which may be recovered under what was formerly called the *indebitatus* count.—1 Chit., 288.

2. "If a contract under seal be invalid or rescinded, and there be evidence upon which an implied contract may be raised, an action for the value may be supported."—1 Chitty on Contract, 104 and

note; *Hill* vs. *Greene*, 4 Pick., 114; *Watchman* vs. *Crook*, 5 Gill & John, 240.

3. Action lies to recover the consideration money for land sold, when contract executed.—*Shepherd* vs. *Little*, 14 John, 162; *Wilkinson* vs. *Scott*, 17 Mass., 249; *Butler* vs. *Lee*, 11 Ala., 885; 1 Comyn on Contracts, 80; *Davenport* vs. *Mason*, 15 Mass., 83.

When we leave the terms of the bond, all is in doubt. It cannot be shown that the minds of the parties met upon any distinct agreement outside of the bond. Under these circumstances what should be the recovery? Undoubtedly the bond or the value of the property. This is just; this is the rule of law, unless it can be shown that the contract was in reference to Confederate money, which cannot be shown.

1. The verdict is right, if the jury were allowed to find that it was the contract of the parties to pay the true value.

2. The verdict is right, if the jury found that the contract was to pay in Confederate money, according to its purchasing value in Abbeville at that time.

3. The verdict is right, if the jury found that the parties made no contract on the subject.

. 4. The verdict is right, if the Ordinance of 1865 has any application.

5. The verdict is right upon every possible view, except the one that the parties *must* have contracted to pay in Confederate money, and that money *must* be valued as set down in the Act, both of which facts are disproved in this case.

Jan. 28, 1875. The opinion of the Court was delivered by

WILLARD, A. J. This action is upon a bond given to the Commissioner in Equity, in 1864, upon the purchase of land. The principal question at issue was as to the amount of plaintiff's recovery. Testimony was given on the question whether the contract, at the time it was made, was intended to have reference to Confederate money. Testimony was also given as to the relative value of Confederate money and lawful money at that time, and also as to the value, at that time, of the land to which the bond related.

The Court instructed the jury as follows:

*First.* That if the debt in this case was created or contracted in Confederate States notes, or with reference to Confederate States

notes, as a basis of value, issued by the so-called Confederate States Government, or in or by any bills, bonds or notes, assimilated or made equivalent to Confederate States notes, by any law or custom of trade, during the years 1861, 1862, 1863, 1864 and 1865, that they should be determined by the value of said Confederate notes in the lawful money of the United States at the time such debts or obligations were created or contracted.

*Second.* That if the jury found that the above liability or obligation was contracted with reference to Confederate States or in Confederate States notes, as a basis of value, that the plaintiff was entitled to recover but one dollar for every twelve dollars and twenty-four cents of the amount of the bond sued on.

*Third.* That if the contract was not made in Confederate States notes, or their basis, as a value, they might inquire and determine whether the bond was to be paid according to the contract in good and lawful money. If so, they should find the amount due on the bond and interest thereon.

*Fourth.* That if they should reject both the foregoing conclusions they might inquire whether the contract between the parties was made with reference to the real and true value of the property, and find according to that value.

The first proposition thus charged was correct. It submitted to the jury the question whether the parties contracted with reference to a standard of value which, at the time of making the contract, prevailed at the place where the contract was made, and, in the event they should find that such was the intention of the parties, that their verdict should be based upon the relation that such local standard bore to the legal standard of money values.

The second proposition charged was erroneous. It took from the jury, in the event of their finding that the contract was based on the value of Confederate notes, the right to determine, as matter of fact, the relative values of such notes and lawful money. This was a question of fact for the jury, and, in determining it, they were bound to take into consideration the evidence adduced as to the purchasing value of Confederate States notes at the time and place of the contract, and if, in their judgment, such evidence establishes a different ratio of values from that declared in the Act commonly known as the Scaling Act, they were not bound by the declaration of values contained in that Act.

This misdirection may have misled the jury, for, although it

would appear that their verdict did not follow this instruction, yet it is possible that, finding themselves shut out from looking to the real value of Confederate currency, and compelled to abide by a standard which, in their judgment, may have appeared unreal and unjust, they were induced to adopt the alternative presented in the fourth proposition charged, by holding the contract to be one to pay what the land was reasonably worth at the time and place of contract.

The third proposition is free from error.

The fourth proposition is erroneous. It virtually authorized the jury to disregard the terms of the bond in suit, and to substitute in their place a contract to pay for land what it was reasonably worth.

Neither Court nor jury can take a liberty of that character with the contracts of parties. The contract in suit was not a contract for the sale of lands, but a bond for the payment of a fixed sum of money upon an executed consideration. A sale of land was its consideration, it is true, but the obligation called for a sum of money alone. As was held by us, in *Neely* vs. *McFadden*, 2 S. C., 169, and the cases following, that the jury may inquire what was meant by the parties in the use of the terms employed to describe the medium for its discharge, and, for the purpose of settling the meaning of these terms and fixing the pecuniary value called for by the obligation, have a right to proof of the real value of the property that was the subject-matter of the sale out of which the obligation arose, but cannot convert an obligation of one kind into another of a different kind, in order to carry out an arbitrary idea of substantial justice that may have become fixed in their minds, independently of the rules and principles of law affording the correct standard in the case.

The solution given to the questions already considered disposes, substantially, of all matters involved in the exceptions to the refusal of the Court to charge propositions that were brought to its attention by the appellants.

There should be a new trial.

MOSES, C. J. I concur in granting a new trial, because the Circuit Judge took from the jury a question of fact and passed upon it as one of law. If the jury concluded, from the testimony, that the contract had reference to Confederate money, it should have been

left to them to ascertain its relative value to national currency, by the application of the Act of 1869, aided, controlled or qualified by the evidence as to such value.

For fear of misapprehension, I consider it proper to say that I still adhere to and recognize what was said in *Harman* vs. *Wallace*, 2 S. C., 212, as to the competency of the parties to show the value of the land, at the date of the transaction, as contributing to develop the real character of the consideration, as allowed by the Ordinance of 1865. This right has been recognized by the Court in more than one case, and, in *Halfacre* vs. *Whaley*, as late as November Term, 1872.

*Wright*, A. J., concurred with *Moses*, C. J.